James A. Towle and George G. Douglas v. William Dunham, Arthur Meigs, and Richard G. Peters, Survivors of Themselves and Henry Seaman, Deceased.

*Partnership—Execution of note—Affidavit of denial—Fraud—Consideration.*

1. An application by defendants to file an affidavit denying the execution of the notes sued upon is held to have been properly denied for the reasons stated in foot-note.
2. Nothing is better settled in the law of partnership than that it is a fraud upon non-consenting members for one partner to use a firm note to pay his individual debt.
3. The creditor of one copartner cannot occupy the position of an innocent purchaser of the firm's commercial paper, for he knows that the consideration is the individual debt of such partner, and that the firm receives no consideration for their promise.
4. The neglect of the *remaining* members of a firm to deny the execution of a note, signed by *one* partner in the *firm* name, admits the genuineness of such firm signature, and the authority of the partner to affix it, but does not admit that the *firm* received a

consideration for such promise, or preclude *such* members from showing the fraud practiced upon them in the *use* made of the firm paper.

5. Fraud may always be shown as between the immediate parties to a written agreement, and in most cases the execution of the agreement is the first step in the proof. *Freeman v. Ellison*, 37 Mich. 459; *Ins. Co. v. McClellan*, 43 Id. 564.

Error to Montcalm. (Smith, J.) Argued June 27, 1889. Decided July 11, 1889.

*Assumpsit.* Defendants bring error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Godwin, Adsit & Dunham,* for appellants.

*J. C. Fitz Gerald* and *William E. Hoyt* (*Francis A. Stace,* of counsel), for plaintiffs.

CHAMPLIN, J. The declaration contains the common counts in *assumpsit.* The suit was commenced by filing and serving declaration, to which was added a notice that on the trial of the cause the plaintiffs, under the money counts, would give in evidence four certain promissory notes, copies of which were given as follows:

"250.      GREENVILLE, MICH., May 27, 1884.
"Ninety days after date we promise to pay to Towle, Douglas & Co., or order, two hundred and fifty dollars, at First National Bank, value received.
"Due Aug. 28.      SEAMAN, DUNHAM & Co."

"$400.      GREENVILLE, MICH., June 20, 1884.
"Sixty days after date we promise to pay to Towle, Douglas & Co., or order, four hundred dollars, at Fourth National Bank, Grand Rapids, value received.
"Due Aug. 22      SEAMAN, DUNHAM & Co."

"275.      GREENVILLE, MICH., June 30, 1884.
"Sixty days after date we promise to pay to Towle, Douglas & Co., or order, four hundred dollars, at Fourth National Bank, Grand Rapids, value received.
"Due Sept. 1.      SEAMAN, DUNHAM & Co."

" $300.                GREENVILLE, MICH., July 31, 1884.

" Sixty days after date we promise to pay to the order of Towle, Douglas & Co. three hundred dollars, at First National Bank, Greenville, value received, with interest at —— per cent. per annum.

" Due Oct. 2.          '          SEAMAN, DUNHAM & Co."

The defendants, William Dunham, Richard G. Peters, and Arthur Meigs, pleaded the general issue, and gave notice thereunder, as follows:

" *To the above-named plaintiffs:*—Take notice that on the trial of the above-entitled cause these defendants, Dunham, Peters, and Meigs, will insist and prove, in their defense, that said notes, copies of which are attached to said declaration, if they were ever given at all by Seaman, Dunham & Co., were written and signed by Henry Seaman, while he was a member of said company, and used by said Henry Seaman in his own business, and not in any way for the business, use, or benefit of the firm of Seaman, Dunham & Co.; and that said plaintiffs, when they received said notes, knew that they were made by said Seaman in fraud of the other members of the partnership of Seaman, Dunham & Co., and without any lawful authority to so use said firm name; and also that these defendants never signed, or authorized the signing of, said notes, or either of them; and that said plaintiffs, when they received said notes, had notice thereof.

" Yours, etc.,
" GODWIN & ADSIT,
" Attys. for Defts., Dunham, Peters, and Meigs."

A jury was empaneled for the trial of the cause on December 12, 1888. The notes, of which copies had been served with the declaration, were offered in evidence; whereupon counsel for defendants, Peters, Dunham, and Meigs, objected, on the ground that the execution of the notes had not been proved.

Counsel for said defendants also asked leave of the court to file an affidavit of the said defendants, denying the execution of the notes by said defendants, or either of them, said affidavit to be in substantial compliance with the notice attached to their plea. The court, for reasons appearing sat-

isfactory to him, denied said motion.   Such reasons are set forth in the bill of exceptions, and we think his discretion was properly exercised in this respect.[1]

Plaintiffs also introduced testimony tending to show that the plaintiffs were the only members of the firm of Towle, Douglas & Co., and there was not and never had been any other members of that firm, and that the notes were indorsed by that firm in the handwriting of one of the members of the firm.   Counsel for plaintiffs thereupon withdrew the note of the date of June 30, 1884, from the case, for what reason is not stated, and read the other notes in evidence.

Counsel for defendants, Dunham, Peters, and Meigs, thereupon opened his case to the jury, and stated his proposed defense, viz.:

"That the firm of Seaman, Dunham & Co. was composed of Henry Seaman, and the defendants, Dunham, Peters, and Meigs; that Seaman had the management of the business of said firm, and was authorized to sign the firm name to all notes, checks, and paper of said firm, in all transactions relating to its business; that the notes in question in this suit were given by said Seaman in payment of indebtedness owing by said Seaman individually to the firm of Towle, Douglas & Co."

Counsel then called Arthur Meigs, one of the defendants, and, an objection being made to his first acknowledgment of the paper, stated to the court what he proposed to prove as follows:

"That they proposed to introduce evidence on the part of the defendants, tending to prove that these notes were not given for partnership purposes; that Henry Seaman had no authority to pay his individual debts by these notes; that the

---

[1] The reasons given were as follows:
That the suit was commenced during the life-time of Seaman, and that the surviving defendants pleaded separately from said Seaman, who signed said notes, prior to whose death the case was noticed for trial at three several terms of court, and after such death it was revived against the surviving defendants, and afterwards noticed for trial, and no showing was made to excuse the delay in filing such affidavit of denial.

firm of Seaman, Dunham & Co. never assumed the indebtedness of Henry Seaman to the plaintiffs; that he did not question the right of the firm so to do; that the plaintiffs knew that the proceeds of these notes did not go to the firm of Seaman, Dunham & Co., and to show that the defendants, Dunham, Peters, and Meigs, never authorized the giving of these notes to Towle, Douglas & Co.; that the giving of these notes was done without their knowledge or consent; that they, said Dunham, Peters, and Meigs, received no benefit from it whatever; and that Towle, Douglas & Co. had knowledge of the fact that the transactions in which these notes were given were for Seaman's individual matter; that the notes were given for Seaman's private purpose and to pay his own individual debt; and that plaintiffs knew that the avails or proceeds of these notes did not redound to the benefit of the company in any way whatever, so far as the defendants, Dunham, Peters, and Meigs, are concerned, and that the notes were given in payment of the individual debts of said Henry Seaman, or for his personal accommodation.

"Whereupon the counsel for the plaintiffs objected to the introduction of any such testimony, as immaterial, irrelevant, and incompetent, and the circuit court gave his ruling and decision that the defendants might introduce evidence tending to show that these notes, or either of them, were executed by Seaman in the name of Seaman, Dunham & Co., to Towle & Douglas, and that they gave him nothing for it, neither a note nor money, and might introduce evidence to show that there was no consideration for the paper.

"But the counsel for the defendants stated that they were unable to produce any such evidence, and did not undertake to prove that Seaman did not receive any consideration for said notes.

"*By the Court.* Now, you say that Towle, Douglas & Co. knew of that. In other words, they knew that this note was given for the benefit of Seaman. Now, that being the case, possibly the other members of the firm might stand in the relation of sureties, and their future arrangements, if they were sufficient, might exonerate the other members of the firm. That being known to Towle, Douglas & Co., why, then, if there was anything that would in law exonerate a surety, if you made any such claim as that, it might be proper to receive evidence upon that theory."

Counsel for defendants, Dunham, Peters, and Meigs, disclaimed any theory that these defendants stood in the relation

of sureties to Seaman upon the notes in question, and the court sustained the objection, and excluded the proffered testimony to establish the defense set up.

Counsel for plaintiffs then proved that the amount due upon the notes was $1,222.95, and the court instructed the jury as follows:

"Now, gentlemen of the jury, in this case I direct a verdict in favor of the plaintiffs in the sum of $1,222.95. It seems to me that that is my judgment as to the law of the case, that the proposed proofs by the counsel for the defendants do not relieve them from their obligations to pay these notes to that amount, and that this firm would be holden for the notes given for the benefit of one member of it; it being conceded that they were made by the firm. So, Mr. Clerk, you will receive a verdict in the sum of $1,222.95."

In the case of *Pegg v. Bidleman,* 5 Mich. 26, the declaration, although verbal and informal, showed that the note filed with the justice was made by S. Pegg & Co. The Court said:

"The correct rule, we think, is that the admission of the execution of the instrument contemplated by the statute is an admission that it was executed by the defendants by the name and description alleged in the declaration."

But the case of *Danaher v. Hitchcock,* 34 Mich. 516, is squarely in point. There the declaration was upon the common counts in *assumpsit,* and declared against the defendants, who were partners, in their individual names, without mentioning the fact of the partnership. A notice was attached that a note, a copy of which was indorsed on the declaration, would be given in evidence under the money counts. This note was signed, "Danaher & Melendy." It was held that the note could be read in evidence without proof of signature.

Conceding in this case that rule 79 applies, and that, because the parties defending did not in due time deny the execution of the notes on oath, they thereby admitted the execution thereof by the partnership, yet it must be held

that the court erred in excluding the testimony offered. The defendants are in no worse situation than they would have been if rule 79 had not been made, and the plaintiffs had proved the execution of the notes by one of the partners. What they proposed to show was the fraudulent use of the notes executed by the firm by one of its members.

Nothing is better settled in the law of partnership than that it is a fraud upon non-consenting members for one of the firm to use a firm note to pay his individual debt. The creditor of the individual cannot occupy the position of an innocent purchaser of the firm's commercial paper, for he knows that the consideration is the individual debt to him of the partner, and he also knows that the firm receives no consideration for their promise. The neglect to deny execution of the notes under oath admitted the genuineness of the signatures as the firm signatures, and the question of the authority of Seaman to sign the firm name to these notes was not open to dispute; but it did not admit that the firm received a consideration for their promises, or preclude them from showing that none was received, nor did it preclude defendants from showing the fraud of the plaintiffs and Seaman in the use to which they put the firm paper.[1]

Fraud may always be shown as between the immediate parties to a written agreement, and in most cases the execution of the agreement is the first step in the proof. *Freeman v. Ellison,* 37 Mich. 459; *Kenton Ins. Co. v. McClellan,* 43 Id. 564 (6 N. W. Rep. 88).

---

[1]Counsel for plaintiffs contended that, by failing to deny the execution of the notes, defendants were estopped from making any defense inconsistent with such execution; citing: *Fish v Hale,* 4 Mich. 506; *Jennison v. Haire,* 29 Id. 207, 212; *Jacobson v. Miller,* 41 Id. 90.

That a consideration passing to Seaman would support the notes, and that it was competent for the firm to make *their* note to pay *his* debt, and any inquiry in that direction would be a question of *authority,* and incompetent against the admission that the note was well executed; citing: *Railroad Co. v. Edson,* 41 Mich. 673; *Randall v. Hunter,* 66 Cal. 512.

The judgment must be reversed, and a new trial ordered.
SHERWOOD, C. J., MORSE and LONG, JJ., concurred.